IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOMINION COVE POINT LNG, L.P. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. AW-06-1983 |
| | ) | |
| .1718 ACRES OF LAND MORE OR | ) | |
| LESS IN CALVERT COUNTY, | ) | |
| MARYLAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Dominion Cove Point LNG, L.P., (Plaintiff), is a natural gas company seeking condemnation of easements in order to construct a natural gas pipeline. Defendants[1] are owners of the property Plaintiff seeks to condemn. On December 19, 2006, Plaintiff filed a Motion for Expedited Consideration (Paper No. 16) and a Motion for Partial Summary Judgment and for Possession of Easements (Paper No. 17). On January 29, 2007, Plaintiff filed a Motion for Entry of Order Granting Possession of Easements and Establishing Bond Amount (Paper No. 19). On February 9, 2007, the Clerk of Court mailed a Rule 12/56 letter to Defendants. *See* Paper No. 21. The letter informed Defendants of their right to file statements or affidavits in opposition and that such opposition must be filed within 17 days of the letter or by February 26, 2007. To date, none of the Defendants have filed a Response and the deadline to file a Response has elapsed. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Plaintiff's

---

[1] There are five named Defendants: (a) .1718 Acres of Land More or Less in Calvert County, Maryland, (b) Michael E. Hatfield, (c) Mary R. Hatfield, (d) Prince George's Community Federal Credit Union, *formerly known as* Prince George's Employees Federal Credit Union, and (e) Bank of America, N.A.

Motion for Expedited Consideration will be denied as moot and Plaintiff's other two motions will be granted.

## BACKGROUND

The following facts are either undisputed or are construed in the light most favorable to Defendants.[2] Plaintiff is an interstate natural gas company as defined by § 2(a) of the Natural Gas Act, 15 U.S.C. § 717 *et seq.* As such, Plaintiff is qualified to construct, own, operate and maintain pipelines to transmit natural gas and its by-products. Compl. ¶ 3. Defendants Michael E. Hatfield and Mary R. Hatfield are the record owners of real property consisting of 10.699 acres of land, located in the 2nd Election District of Calvert County, Maryland. Their property is described in a deed dated August 21,1986 and recorded among the land records of Calvert County, Maryland, in Book 378, Page 75. Their property is further identified as follows: Tax Account ID 02-064642, Map 20, Grid 23, Parcel 187, Lot 4. *Id.* ¶ 4. The land records of Calvert County, Maryland list two additional parties who may have an interest in the Hatfields' property, specifically, Prince George's Employees Federal Credit Union (a deed of trust against the Hatfields' property recorded in Book 2019 at Page 364) and Bank of America, N.A. (a deed of trust against the Hatfields' property recorded in Book 1117, Page 341, as modified in Book 1581 at Page 622). *Id.* ¶ 5.

Plaintiff owns and operates a liquefied natural gas facility located on the Chesapeake Bay in Cove Point, Maryland ("Cove Point Facility"). Plaintiff operates a natural gas pipeline that extends from Cove Point, Maryland to Loudoun County, Virginia. *Id.* ¶ 7. On April 15, 2005, Plaintiff applied to the Federal Energy Regulatory Commission ("FERC") for authorization to expand the Cove Point Facility and its related natural gas pipeline ("Cove Point Expansion Project").

---

[2] None of the Defendants filed an Answer to Plaintiff's Complaint.

The Cove Point Expansion Project consists of three elements, but only one, the pipeline expansion, is relevant to this litigation.  *Id.* ¶¶ 8-9.  On June 16, 2006, FERC issued Certificates of Public Convenience and Necessity ("FERC Certificates") to Plaintiff for the Cove Point Expansion Project. By issuing the FERC Certificates, FERC approved and authorized the pipeline expansion and approved the routing of the pipeline.  *Id.* ¶¶ 10-11.  Specifically, Plaintiff has permission to construct a new 36" natural gas pipeline and appurtenances (collectively, the pipeline) that will extend 47 miles from Cove Point, Maryland to a point on the eastern shore of the Potomac River.  Although 36 of 47 miles or 75% of the pipeline will parallel the path of Plaintiff's existing pipeline, 11 of 47 miles or 25% will deviate from the existing pipeline to minimize environmental and landowner impacts.  *Id.* ¶ 12.  Plaintiff cannot begin to construct the pipeline until Plaintiff acquires certain permanent right-of-way easements and temporary construction easements over the Hatfields' property which are necessary for constructing, maintaining, operating, altering, testing, replacing and repairing the pipeline.  *Id.* ¶ 14.

Defendants shall retain the right to use their property in any manner subject to the temporary and permanent easements which preclude Defendants from interfering with Plaintiff's use and enjoyment of rights.  Specifically, "[defendants] shall have the right to cross over and upon said easements and to use the surface over the easements in such manner as will neither injure nor interfere with the construction, operation, and maintenance of the Pipeline, except that the ground surface elevation shall not be changed and no building, fence or other structure shall be erected over the easements except by mutual consent in writing of the parties hereto or their successors."  *Id.* ¶ 18.

Plaintiff has negotiated with Defendants and has made bona fide efforts to acquire the

easements by agreement.  Plaintiff has been unable to obtain rights to the easements by contract.

The parties are unable to agree on the compensation to be paid.  *Id.* ¶ 20.  Plaintiff requests the right

for immediate possession of the easements for the purpose of constructing the pipeline and, pursuant

to the authority granted to Plaintiff by section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h),

seeks to take by eminent domain those easements.  *Id.* ¶¶ 19, 21.

## APPLICABLE LAW

The Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), grants gas companies the power of

eminent domain.  *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 821 (4th Cir.), *cert.*

*denied*, 543 U.S. 978 (2004).  A gas company must first obtain a certificate of public convenience

and necessity from FERC.  *Id.* at 818.  The application to FERC must contain, among other

information, (1) a description of the proposed pipeline project, (2) a statement of the facts showing

why the project is required, and (3) the estimated beginning and completion date of the project.  15

U.S.C. § 717f(d); 18 C.F.R. § 157.6(b).  Notice of the application is filed in the Federal Register,

18 C.F.R. § 157.9, public comment and protest is permitted, *id.* § 157.10, and FERC conducts a

public hearing on the application, *id.* § 157.11.  "As part of its evaluation FERC must also

investigate the environmental consequences of the proposed project and issue an environmental

impact statement."  *East Tennessee*, 361 F.3d at 818; *see* 42 U.S.C. § 4332.  After the evaluation,

FERC issues a certificate if it finds that the proposed project "is or will be required by the present

or future public convenience and necessity[.]"  15 U.S.C. § 717f(e).  FERC also specifies a date for

the completion of construction and the start of service.  18 C.F.R. § 157.20(b).  The certificate may

include any terms and conditions that FERC deems "required by the public convenience and

necessity."  *Id.* § 157.20.  Once FERC has issued a certificate, the NGA empowers the certificate

holder to exercise "the right of eminent domain" over any lands needed for the project.  15 U.S.C. § 717f(h).

The NGA provides that "[w]hen any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States. . . ."  15 U.S.C. § 717f(h).  "A special rule, [Federal Rule of Civil Procedure] 71A, governs the procedure in a condemnation action."  *East Tennessee*, 361 F.3d at 821.  To commence the condemnation, the certificate holder must file a complaint which sets forth the authority for the taking, the use for which the property is being taken, the identity of the property, and the interest to be acquired.  Fed. R. Civ. P. 71A(c)(2).  The action then proceeds in due course to the determination of just compensation for the owner of the land.  Fed. R. Civ. P. 71A(h).  After the determination and payment of just compensation, the condemning authority can take possession of the property.  *East Tennessee*, 361 F.3d at 821.

In this case Plaintiff seeks possession before the determination and payment of compensation.  The Constitution does not prohibit a condemnor from obtaining possession of property before compensation is paid, and neither the NGA nor Rule 71A addresses this issue.  *East Tennessee*, 361 F.3d at 821-24.  However, Rule 71A provides that the other Federal Rules of Civil Procedure apply to any matter not covered by Rule 71A.  *See* Fed. R. Civ. P. 71A(a).  As a result, Rule 65(a)'s provision for preliminary injunctions applies to condemnation cases.  "[A] gas company with condemnation power under the NGA may apply under Rule 65(a) for a preliminary injunction awarding immediate possession."  *East Tennessee*, 361 F.3d at 824.  Thus, once the Court determines that the complainant has a right to take the easement, it may then consider a request for

a preliminary injunction granting immediate possession. *Id.* at 825.

In deciding whether to grant a preliminary injunction, the Court should consider (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-96 (4th Cir. 1977). "[T]he [gas] company must demonstrate that it will suffer irreparable harm without immediate possession, and the company's harm must be weighed against any harm to the landowner." *East Tennessee*, 361 F.3d at 825 (citation omitted). Finally, the gas company must provide security for reasonably adequate and certain payment of compensation. *Id.* at 826; *see also* Fed. R. Civ. P. 71A(j) ("[t]he plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain[.]"). The Fourth Circuit concluded that these safeguards adequately protect landowners in cases where immediate possession may be granted. *East Tennessee*, 361 F.3d at 826.

## ANALYSIS

A.      *Plaintiff is authorized to condemn the property.*

The NGA provides that:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located. . . .

15 U.S.C. § 717f(h).

It cannot be disputed that Plaintiff holds a certificate of public convenience and necessity

from FERC. *See* Compl., Ex. 2. Plaintiff provided the Hatfields with an appraisal, offered to meet the Hatfields to discuss compensation and made two firm offers to purchase the easements, the first based on the appraisal and the second above the appraised value. The Hatfields ignored or rejected each of Plaintiff's offers. The Hatfields declined to meet Plaintiff to discuss compensation. Paper No. 17, Ex. 2 (Sommerville Decl. ¶¶ 9-14). Based on Sommerville's unopposed declaration, it is evident Plaintiff and Defendants failed to agree upon compensation. Thus, in accordance with § 7(h) of the NGA, Plaintiff is entitled to condemn the property.

B.      *Plaintiff is entitled to immediate possession.*

      1.      *The likelihood of irreparable harm to Plaintiff.*

Plaintiff's Project Manager, David L. Mordan, Jr., outlined the necessity of beginning the pipeline construction no later than June, 2007. *See* Paper No. 17, Ex. 1 (Mordan Decl. ¶¶ 5-15). Plaintiff plans to have the project in service to the public by 2008. *Id*., Ex. 1 (Mordan Decl. ¶¶ 5, 7).[3] To do so, Plaintiff plans to construct six horizontal directional drills ("HDD") during 2007, which drill under various bodies of water. *Id.*, Ex. 1 (Mordan Decl. ¶ 9). These drills involve a new and complex technology in which a large-diameter bore is drilled from one side of a body of water to the other using a large machine without disturbing the body of water itself. *Id.*, Ex. 1 (Mordan Decl. ¶ 11). Only a limited number of contractors are involved in the HDD business and fewer capable of drilling the long distances necessary for the large pipeline to be installed in Maryland. *Id.* If Plaintiff is forced to use alternative methods other than HDDs, numerous state and federal agencies will require additional reviews of the alternative procedures. Such additional reviews will

---

[3] The FERC certificate provides that construction must be completed within three years from the date of its order, issued June 16, 2006. *See* Compl., Ex. 2 (FERC Order Issuing Certificates & Granting Section 3 Authority, at 73, para H).

last a minimum of several months or longer.  *Id.*, Ex. 1 (Mordan Decl. ¶ 13).

Plaintiff asserts that it must get a tidal wetlands license from the Maryland Board of Public Works before the HDD drilling through the various bodies of waters[4] along the pipeline route can begin.  *Id.*, Ex. 1 (Mordan Decl. ¶ 12).  Plaintiff must secure the property rights from the landowners adjoining the tidal water bodies before it can receive the tidal wetlands license.  *Id.*  The Maryland Department of the Environment must prepare a report and recommendation before the Maryland Board of Public Works will issue the license.  *Id.*  Once the tidal wetlands license is granted, Plaintiff must then wait for additional reviews from FERC before beginning construction.  *Id.*  These approval processes can take several months after securing the property rights.

Plaintiff also cites the threat of inclement weather and the short length of the construction season as reasons it must begin construction by June of 2007.  *Id.*, Ex. 1 (Mordan Decl. ¶ 14).  Although the preference of the pipeline construction industry is to commence construction around June 1st, "some agencies impose restriction on work around streams and wetlands to protect fish spawning so that work cannot begin in those areas until after June of a given year."  *Id.*  Combined with the threat of inclement weather, this eliminates a significant portion of the year.  According to Mordan, "it is not practical to undertake such a vast and complex construction project in a single year, particularly with six HDDs under different water bodies."  *Id.*, Ex. 1 (Mordan Decl. ¶ 15).  By beginning the construction during 2007, Plaintiff will have sufficient time for re-drilling and re-engineering in the event the initial drills are unsuccessful.  *Id.*

Finally, separate hearings on compensation will be required for each of the many tracts of

---

[4] Plaintiff must drill under six water bodies along the pipeline route:  St. Leonard Creek; Hunting Creek; the Patuxent River; Zekiah Swamp; Jordan Swamp; and Mattawoman Creek.  Paper No. 17, Ex. 1 (Mordan Decl. ¶ 9).

property Plaintiff seeks to condemn, and scheduling and conducting those hearings will take an extended period of time. *See East Tennessee*, 361 F.3d at 828. In *East Tennessee* the Fourth Circuit concluded that the district court's finding that "the Patriot Project would suffer 'undue delay' and that this delay would cause 'significant financial harm' both to [the East Tennessee Natural Gas Company] and some of its putative customers" was sufficient to show a likelihood of irreparable harm if immediate possession was not granted, *i.e.*, without a preliminary injunction. *Id.* at 828-29. In issuing the certificates of public convenience and necessity, FERC mandated that the construction of the facilities shall be completed within three years or by June of 2009. *See* Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, at 73, para. H). This deadline underscores the significant undue expense and delay set forth in Plaintiff's evidence. The Court thus finds there is a likelihood of irreparable harm to Plaintiff if immediate possession is not granted.

>2.     *The likelihood of harm to the landowners.*

Defendants did not file a Response or Opposition to Plaintiff's Motion for Partial Summary Judgment and for Possession of Easements. In fact, Defendants did not even file an Answer to the Complaint. The only evidence before the Court concerning Defendants' objections to the easements is the Declaration of Larry Sommerville. *See* Paper No. 17, Ex. 2. Sommerville, an employee of Universal Field Services, Inc., ("Universal"), has been engaged in the business of right-of-way acquisitions for almost 30 years involving more than 100 projects. *Id.*, Ex. 2 (Sommerville Decl. ¶ 1). Plaintiff retained Universal to assist Plaintiff in providing land acquisition services as Plaintiff's agent for the Cove Point Expansion Project. *Id.*, Ex. 2 (Sommerville Decl. ¶ 2). According to Sommerville, on February 11, 2006, a written offer was hand delivered to Mr. Hatfield to purchase the easements from Mr. and Mrs. Hatfield. On March 17, 2006, Mr. Hatfield indicated

being unhappy with the per acre value Plaintiff assigned to the easements.  Thus, Plaintiff had the easements appraised.  The appraisal set a higher value for the easements.  On June 14, 2006, Plaintiff's agent hand delivered another written offer to Mr. Hatfield reflecting the appraised value plus timber.  *Id.*, Ex. 2 (Sommerville Decl. ¶¶ 7-11).  According to Sommerville, "Mr. Hatfield responded to Dominion's offer by stating that he would 'toss it in the trash' because of Dominion's offer for his mother's property, which was also the subject of negotiations to purchase the easements related to the Project."  *Id.*, Ex. 2 (Sommerville Decl. ¶ 11).  On June 30, 2006, Plaintiff's counsel sent a letter to the Hatfields reiterating Plaintiff's offer to purchase easements for the full appraised value.  Plaintiff also offered to meet with the Hatfields or their representatives to answer any questions or to discuss compensation.  Neither the Hatfields nor their representative responded.  On July 10, 2006, Plaintiff's counsel sent a second letter increasing Plaintiff's total offer for the easements.  No response was received.  *Id.*, Ex. 2 (Sommerville Decl. ¶¶ 12-13).  On October 3, 2006, Plaintiff's agent met with Mr. Hatfield to close on his mother's property.  According to Sommerville, "[w]hile the closing was successfully executed, Mr. Hatfield refused to settle with Dominion regarding his own property 'as a matter of principal.'  Dominion's agent offered to make the access road temporary and added twenty-five percent (25%) to Dominion's offer.  Unfortunately, Mr. Hatfield continued to refuse to discuss settlement."  *Id.*, Ex. 2 (Sommerville Decl. ¶ 14).

Defendants have had an opportunity to file a response but have declined to do so, even after the Clerk of this Court informed Defendants, by letter on February 9, 2007, of their right to file statements or affidavits in opposition and that such opposition must be filed within 17 days of the letter or by February 26, 2007.  *See* Paper No. 21.  The Court does not know, directly from Defendants, what is the likelihood of harm they will suffer from the Cove Point Expansion Project.

What the Court is able to glean from Sommerville's declaration however is Mr. Hatfield's dissatisfaction with the amount of compensation Plaintiff offered. "[T]he Constitution 'does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed.'" *East Tennessee*, 361 F.3d at 824 (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)). Based on the evidence presented to this Court, the harm to the Hatfields is not irreparable but is rather compensable. That harm therefore is outweighed by Plaintiff's immediate need for the easements.

   *3.  Plaintiff will succeed on the merits.*

The Court has found that Plaintiff, having obtained a certificate of public convenience and necessity from FERC, is authorized to condemn the property. Plaintiff's success on the merits is established.

   *4.  The public interest.*

The Fourth Circuit has recognized the substantial public interest involved in the need for natural gas supply. *East Tennessee*, 361 F.3d at 830. Here, as in that case, FERC has evaluated the need and concluded the pipeline project is required by public convenience and necessity. *Id.* In this case, FERC explained how the project serves the public interest.

> Expansion of the Cove Point Pipeline facilities . . .will make available gas supplies which would otherwise be unavailable, providing shippers with enhanced access to firm natural gas storage capabilities and to additional natural gas markets throughout the northern and eastern United States. By this proposal, new gas supplies will be delivered to where they are needed in the Mid-Atlantic and northeastern United States. The project will bring new gas supplies into the heart of the market area by providing new gas sources for the shippers on Dominion, Transco and Columbia pipeline systems, which serve most of the major eastern United States

markets and where the demand for natural gas is growing. In addition, [liquefied natural gas] is expected to play a vital role in meeting the increased demands for natural gas from all consuming sectors. The growing importance of [liquefied natural gas] is evidenced by INGAA's[5] July 2004 study which found that a delay as short as two years in the construction[] of gas pipelines, storage facilities, and [liquefied natural gas] import terminals will cost the United States gas consumers more than $200 billion.

Compl., Ex. 2 (FERC Order Issuing Certificates and Granting Section 3 Authority, ¶ 126).

To assure that these needs are timely met, FERC has ordered Plaintiff to complete the project by June 16, 2009. No evidence has been presented contradicting that the necessity of this project is to serve the public interest.

## CONCLUSION

Defendants failed to present any evidence, in accordance with Rule 56, which rebuts the declarations of Mordan and Sommerville. No genuine issue of material fact has been presented. Partial summary judgment in favor of Plaintiff and against Defendants is appropriate. Plaintiff has the right to condemn the property and has shown that a preliminary injunction granting immediate possession should issue. An Order will be entered granting Plaintiff immediate possession of the easements as described in the Complaint. Immediate possession is contingent upon Plaintiff posting, with this Court, a bond in the amount of *$5,603.95* with corporate surety, representing Plaintiff's appraised value of Defendants' easements.

Date:_____March 14, 2007_____          _____/s/_____
                                                  Alexander Williams, Jr.
                                                  United States District Judge

---

[5] Interstate Natural Gas Association of America.